EMILY H. PHILLIPS & others *vs.* INHABITANTS OF MARBLEHEAD.

Essex. November 9, 1888. — January 4, 1889.

Present: MORTON, C. J., FIELD, DEVENS, C. ALLEN, & KNOWLTON, JJ.

*Taking of Land for Way — Damages — Evidence — Experts — Contradiction of Witness — Record of Selectmen.*

The question whether a witness has the requisite knowledge to enable him to give an opinion upon the value of land is largely within the discretion of the judge presiding at the trial; and such discretion was *held* to be rightly exercised in excluding a witness as not qualified, especially in view of the fact that witnesses were offered whose qualifications were unquestioned.

If a witness to the value of land is allowed to testify, without objection, to the value of his own land adjoining, it is within the discretion of the presiding judge to admit, in evidence, for the purpose of contradicting the witness, a worn statement previously made by him to the assessors of taxes placing a different value upon his land.

The record of a board of selectmen, showing the damages awarded for land taken for a way, is not competent evidence to contradict a selectman signing the record, who subsequently testifies, as an expert, that the land was of a value less than the sum awarded.

PETITION to the Superior Court for a jury to assess the damages caused by the taking by the respondent of land of the petitioner, in July, 1886, for the laying out of Atlantic Avenue in Marblehead. At the trial in the Superior Court, before *Lathrop*, J., the only question was as to the value of the tract taken.

One Mason, called by the petitioners among other witnesses to prove such value, testified that he was a watchmaker and jeweller, about forty-five years of age, and had always lived in

Marblehead; that he did not own real estate in the town, and had not bought or sold real estate there; that he had for several years advised his father, or, rather, his father, who had bought and sold real estate in the town, had advised him; that he had heard of a great many of the sales of real estate in the town in the last five or ten years, and at the time of such sales of the prices paid for the land; that he had heard of sales of land along Marblehead shore, which was distant from the petitioners' land two hundred and fifty feet at the nearest point and was separated from it by higher land, and had heard of some of the prices paid; that he was familiar with the petitioners' land, having known it all his life; that he had heard of sales and prices of land upon other streets extending parallel with the petitioners' land and a few hundred feet distant therefrom, but could not tell of any particular sales; that he had been a collector of taxes in the town, and had in one instance acted as an appraiser of real estate; and that he thought he had a judgment as to the fair market value of real estate in Marblehead, and as to the fair market value of the land taken from the petitioners.   The petitioners, to prove the market value of the land taken, then offered to ask him the following question: "What in your judgment was the fair market value upon July 27, 1886, of the land taken from the petitioners for the laying out of said street?"   The judge, remarking, "There must be better evidence to be had," excluded the question, upon the ground that the witness was not qualified as an expert to express an opinion as to such market value; and to this the petitioners excepted.

The petitioners put in the testimony of many experts as to the value of the land; among others, that of one Wyman, who owned a farm adjoining the petitioners' land, of the same general character.   Upon cross-examination Wyman testified that his farm was worth two thousand or twenty-five hundred dollars per acre; and thereupon the respondent, against the petitioners' objection and exception, was allowed, solely as bearing upon the question of the bias of the witness, to place in his hands a written statement, dated about June, 1886, directed to the assessors of Marblehead, and signed and sworn to by the witness, and to ask him to say from it what value he therein

placed on such land of his, to which he replied, " One hundred dollars per acre," and added that he so valued it, and it was so understood to be valued, for its agricultural purposes only.

The respondent called as a witness one Martin, a member of the board of selectmen of Marblehead in 1886, who testified as an expert as to the value of the petitioners' land. Upon cross-examination he testified that the petitioners had in his judgment sustained damage to the amount of three hundred dollars, and no more. The petitioners then offered in evidence, solely for the purpose of contradicting the witness Martin, the record of the board of selectmen of Marblehead made July 27, 1886, showing the laying out of Atlantic Avenue, and the amount of damages therefor, signed by Martin together with the other members of the board. The record contained the statement that the petitioners had sustained damage by the taking of their land to the amount of five hundred and fifty-three dollars, and that that sum was awarded to the petitioners. The judge ruled that the record was not admissible in evidence for the purpose named, and the petitioners excepted.

The jury returned a verdict for the respondent; and the petitioners alleged exceptions.

*F. L. Evans*, for the petitioners.

*W. D. Northend*, for the respondent.

FIELD, J. Whether a person, who is offered as a witness, is shown to be qualified to give an opinion upon the value of land, must be left largely to the discretion of the presiding judge. We cannot say, upon the evidence recited in the exceptions, that Mason was not rightly excluded as a witness to value. The case shows that there was no difficulty in obtaining witnesses whose qualifications were unquestioned, and this fact was properly considered by the presiding judge in deciding to exclude him. *Tucker* v. *Massachusetts Central Railroad*, 118 Mass. 546, 548.

It was also, we think, within the discretion of the presiding judge to admit the question which was put to Wyman by the respondent on cross-examination, to which the petitioners objected. As Wyman's land was adjoining to and of the same general character as that of the petitioners, sales of it would be competent to prove the value of the petitioners' land ; but the

opinion of witnesses upon the value of Wyman's land would not be competent to prove the value of the petitioners' land. *Wyman* v. *Lexington & West Cambridge Railroad*, 13 Met. 316, 327. *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115. When, therefore, the respondent asked the witness Wyman his opinion of the value of his own land, the question should have been excluded, if objection had been made. The question, however, having been answered, without objection, the respondent could not have been permitted to contradict the answer by the testimony of other witnesses, or by other evidence than the testimony of the witness himself. Immaterial or irrelevant issues cannot be raised and tried in this manner. *Fletcher* v. *Boston & Maine Railroad*, 1 Allen, 9. *Shurtleff* v. *Parker*, 130 Mass. 293. But the testimony admitted was relevant to the testimony of the same witness already in evidence without objection, and it was admitted solely on the question of the bias or fairness of the witness. The extent to which the cross-examination of a witness as to credit may be carried must be left largely to the judge presiding at the trial, and if matters which are merely immaterial, or which tend to show the reasons of the witness for his opinions or his fairness of mind, are admitted in cross-examination, there is, as a general rule, no exception. Considerable latitude should be allowed in cross-examining witnesses to value, in order that the grounds of their opinion may appear. *Prescott* v. *Ward*, 10 Allen, 203. *Smith* v. *Castles*, 1 Gray, 108.

The record of the board of selectmen, of whom Martin was one, was offered for the purpose of contradicting the testimony of Martin. The fact that the record, or certificate, was signed by Martin, as well as by the other selectmen, did not show that the amount of the damages awarded was the sum which Martin, acting on his own judgment, thought ought to have been awarded. Selectmen have no clerk, and their doings can only be certified by their own signatures, and the certificate purported to give, not the opinion of the selectmen individually, but the judgment of the board, which might be the judgment of a majority only of a quorum of the board. Besides, in every judicial or quasi judicial determination of damages by a board composed of more than one person, there must be compromises of individual opinion in order that any result may be reached, and a judicial body

must give some weight to evidence, and cannot act solely upon the personal knowledge of its members, when evidence is produced before them. Either, then, the record should have been excluded, or, if admitted, Martin and the other selectmen should have been permitted to testify to the part taken, and to the opinions expressed by Martin in the deliberations of the selectmen which resulted in the award. While the deliberations of legislative bodies are usually public, the deliberations of judicial or quasi judicial bodies are private, and there are reasons of public policy why they should not be made public, particularly when the purpose to be served is comparatively unimportant. Grand and petit jurors are not permitted to testify to opinions concerning the case expressed in their consultations with one another, and arbitrators are not permitted to testify to the grounds on which they reached the conclusions declared in the award. *Bigelow* v. *Maynard,* 4 Cush. 317. *Woodward* v. *Leavitt,* 107 Mass. 453. *Commonwealth* v. *White,* 147 Mass. 76. For the purpose of contradicting a witness, we think that evidence ought not to be received of the deliberations of selectmen acting in a quasi judicial capacity, and that the certificate of the doings of the board of selectmen was rightly excluded.

*Exceptions overruled.*