[S. F. No. 7148. Department One.—October 17, 1916.]

# HALF MOON BAY LAND COMPANY et al., Respondents, v. S. H. COWELL et al., Defendants and Appellants; E. N. TORELLO, Defendant and Respondent.

WATER—RIPARIAN RIGHTS—GRANT OF RAILROAD RIGHT OF WAY THROUGH RIPARIAN LAND.—A conveyance of a part of a tract of riparian land to a railroad for a right of way does not cut off the riparian rights from an unconveyed portion of the tract, where the stream runs under the railroad, through the strip deeded for railroad purposes and through such unconveyed portion.

ID.—DELTA LAND—BED OF STREAM ABOVE LEVEL OF ADJOINING LAND.—Delta land situated at the lower end of a stream does not lose its riparian character and rights merely because the bed of the stream, through the deposit of debris, is raised above the level of the adjoining land, and the land is thus caused to slope away from the stream.

ID.—PERMISSIVE USE OF WATER—DIVERSION TO NONRIPARIAN LAND.—Where the use of water diverted to nonriparian lands is permissive, no right to continue it would accrue from long-continued use.

ID.—RIGHT OF RIPARIAN OWNER TO USE WATER—WATER NOT USED BY OWNER ENTITLED THERETO—DECREE APPORTIONING WATER.—Each riparian owner has the right to use the whole or any part ·of the water on his own riparian land at any time when such use does not interfere with the actual use by the other owners of their due shares. If any such owner is not using the water himself, he has no right to object to the use of it by another riparian owner on riparian land. A judgment determining the respective rights of riparian owners and apportioning to each the proper amount of the water for use on his riparian land should specifically declare such right to the unused water.

ID.—FACTS TO BE CONSIDERED IN MAKING APPORTIONMENT.—In apportioning the waters of a stream among the riparian owners, where

there is not sufficient for the needs of all, many different facts are to be considered, among which are the length of the stream, the volume of water, the extent of each ownership along the banks, the character of the soil owned by each contestant, the area sought to be irrigated by each, the practicability of irrigation of the lands of the respective parties, the expense thereof, the comparative profit of the different uses which could be made of the water on the land, and when the water is insufficient for all the land or for all the uses to which it might be applied thereon, and there is enough only for that use which is most valuable and profitable, the shares may properly be limited to and measured by the quantity sufficient for that use, and the proportions fixed accordingly. The party taking under such a decree could put his share so fixed to another beneficial use if he so desired.

ID.—WATERING STOCK AND DOMESTIC PURPOSES—DECREE MAKING NO PROVISION FOR—PRESUMPTION ON APPEAL.—Where a judgment apportioning the waters of a stream to riparian owners makes no specific allowance to the parties for water to be used for watering stock and for domestic purposes, and the evidence fails to show the quantity necessary for such purposes, or that there is any necessary in addition to the quantity allotted, it will be presumed on appeal, in aid of the judgment, that the trial court considered the allotments sufficient to cover all purposes.

ID.—RIGHT OF RIPARIAN PROPRIETOR NOT DEPENDENT ON USE OF WATER. A riparian owner is entitled to use his reasonable share of the water on riparian land at any time he may choose to do so. He does not gain such right by use nor does he lose it by disuse, and his failure to use it in the past does not impair his right to use it in the future.

ID.—FINDINGS — LAND NOT CAPABLE OF PROFITABLE IRRIGATION — EVIDENCE.—A finding that a certain portion of the land of a lower riparian proprietor was not capable of profitable irrigation and excluding it from the right to water for that purpose, is sustained by the evidence, notwithstanding there was testimony showing the feasibility of irrigating it by means of a dam and diversion ditch erected on the land of an upper proprietor, when there was no proof that the acquisition of the right to construct and the construction of such dam and ditch would not cost too much to render the scheme profitable.

APPEAL from a judgment of the Superior Court of San Mateo County, and from an order refusing a new trial. George H. Buck, Judge.

The facts are stated in the opinion of the court.

Mastick & Partridge, Peter F. Dunne, and W. I. Brobeck, for Appellants.

H. A. Van C. Torchiana, Stratton, Kaufman & Torchiana, and Bourdette & James, for Plaintiffs and Respondents.

John F. Davis, and Ross & Ross, for Defendant and Respondent.

SHAW, J.—The plaintiff Half Moon Bay Land Company, the defendants Cowell et al., who are appellants, and the defendant Torello, each own separate tracts of land through which runs a stream of water known as San Vicente Creek. The plaintiff Quilici is a tenant of the plaintiff land company and some of the appellants are tenants of the Cowells and the Cowell estate, who are the owners of the tract of land referred to as owned by the appellants. The object of the action was to ascertain the amount of water of the stream that each owner was entitled to under his riparian rights, and to apportion to each the proper amount for use on his riparian lands and to enjoin each of the defendants from diverting more than his reasonable share of the water. It appears that the plaintiff's parcel of land contains 108 acres; that the land of the appellants contains 195.96 acres and that of the defendant Torello 714.22 acres. The land of the defendant Torello lies highest on the stream; next comes that of the appellants, and below that is the land of the plaintiff Half Moon Bay Land Company. A considerable portion of the land lies on steep hillsides. The court made findings that sixty-six acres of the plaintiff's land is suitable for profitable irrigation and is riparian to said creek; that a portion of the land of the appellants is not within the watershed contributing to said creek, and that of the land within the legal watershed of the stream only 34.25 acres was capable of profitable irrigation from the creek; and that of the land of the defendant Torello, only ninety-six acres could be profitably and advantageously irrigated from said stream. It further found that one miner's inch of water continuous flow during the irrigation season was sufficient to irrigate ten acres of land; that eight miner's inches would be sufficient to irrigate the said sixty-six acres of the plaintiff; that four and a half miner's inches would sufficiently irri-

gate the land of the appellants susceptible of irrigation from the stream; and that ten and a half miner's inches would sufficiently irrigate the lands of the defendant Torello found to be susceptible of irrigation. The appellants claim a prescriptive right to a portion of the water by use upon a part of their lands situated beyond the ridge which divides the land sloping to San Vicente Creek from the land sloping to an adjoining stream known as Dennison Creek. The court found that this claim was without foundation, because the use of the water of San Vicente Creek on said land was not adverse, but was permissive so far as plaintiff and their predecessors in interest were concerned.

Thereupon it was adjudged that plaintiff is entitled to a continuous flow of eight miner's inches for irrigation of its riparian land; that the appellants are entitled to a continuous flow of four and a half miner's inches of water for irrigation of their riparian land; and that Torello is entitled to a continuous flow of ten and a half miner's inches of water for the irrigation of his riparian land; that if at any time there is less water flowing in the creek than the aggregate amounts allotted to the several parties, then each should take less in the same proportion; that when more water is flowing than the aggregate of the amounts allotted and any additional area of land belonging to the appellants or to the defendant Torello within the watershed of the creek should prove to be capable of profitable irrigation, said appellants, or said Torello, should be allowed to use on such additional land the additional water therein in excess of the amount allotted by the judgment and in proportion to the amount of additional land so capable of profitable irrigation. It is further adjudged that the appellants have no right to divert water from said creek to nonriparian lands, and they are enjoined from so doing. It is also provided that nothing in the judgment should prevent the appellants or Torello from using more water on their riparian lands when the plaintiff or other lower proprietors do not object thereto. Other provisions were inserted which are not necessary here to mention. The defendants, other than Torello, appeal from the judgment and from an order denying their motion for a new trial.

The first point urged in support of the appeal is that the court erred in determining that more than 9.61 acres of the

irrigable land of the plaintiff is riparian to the creek and entitled to water therefrom as riparian land. The first reason advanced for this claim is that before this action was begun one Quilici, from whom the plaintiff derived title, had conveyed in fee to the Ocean Shore Railway Company a strip of land sixty feet in width extending through the tract and cutting off all except 9.61 acres from access to said creek. This, it is said, cut off access to the stream from the remainder of the tract and deprived the land so separated of riparian rights therein. The answer is that the railroad right of way does not cut off that part of the land from the stream. The creek runs under the railroad, through the strip deeded for railroad purposes, and through the part of the tract lying westerly of the railroad. This is sufficient to give all that part of the tract the character of riparian land, and entitles the owner to the use of the water from said stream thereon. It is unnecessary to determine whether or not a conveyance of land to a railroad for a right of way would cut off riparian rights from land thereby wholly severed from the stream. A further claim is made because, as appellants say, the slope of the abutting land of the plaintiff would carry water away from the stream, and that upon the principles laid down in *Bathgate* v. *Irvine,* 126 Cal. 135, [77 Am. St. Rep. 158, 58 Pac. 442], and *Anaheim etc. Co.* v. *Fuller,* 150 Cal. 327, [11 L. R. A. (N. S.) 1062, 88 Pac. 978], it is not riparian, and the owner thereof is not entitled, as a riparian owner, to the use of water of the stream upon said land. The topographical character of the land involved in these two cases was so different from that of the land here involved that the decisions cannot be said to have any application. This sixty-six acres of the plaintiff's land lies in the flat territory bordering upon the ocean near the outlet of the creek. It can scarcely be said to have any grade or slope. The proof indicates that its general slope is toward the ocean and from a fourth to a half of one per cent from horizontal. In delta land situated at the lower end of the stream, the water in the bed of the stream is often higher than the adjacent land, and that was the situation in the case at bar. This occurs to land properly within the watershed and from natural causes. The torrential flow from the steeper grades carries the debris down to the flat land, where it is deposited, raising the bed above the

level of the land adjoining. It would be an extremely unwise and unjust adherence to a supposed rule to declare that land thus made to slope away from the stream is thereby deprived of the riparian character and rights. In *Bathgate* v. *Irvine,* the water was taken out of the creek and carried around the nose of a ridge separating the watershed of that creek from that of another stream, and for use upon land situated in a different valley some miles away. In the Anaheim Union Water Company case the water was taken from the Santa Ana River over an intervening elevation to be used upon land sloping away from the river and into another and distinct stream, the only connection between the two watersheds being that the last-mentioned stream entered the Santa Ana River a considerable distance below the land upon which the water was to be used. None of the reasons existing there and given as the foundation of the rule exist in this case. In such a case, "When the reason of a rule ceases, so should the rule itself." (Civ. Code, sec. 3510.) The above decisions have no just analogy to the case at bar, and the rule there applied cannot be applied here.

The finding that the water diverted by the appellants from the stream and carried from the watershed to lands sloping toward Dennison Creek was permissive is sustained by sufficient evidence. The court may reasonably have inferred from all the evidence that the discussions of the parties on this subject were nothing more than efforts to accommodate all parties concerned without controversy, rather than the assertion of a right by one party and a yielding thereto by the other. The evidence at best is conflicting on the subject, and it would serve no useful purpose to discuss it further. The finding to that effect is conclusive here. The use being permissive, no right to continue it would accrue from long-continued use.

The appellants further claim that the apportionment of the water made by the court does not give them a reasonable share. The court did not attempt to apportion the entire quantity of water that might at any time be flowing in the stream. The apportionment was made of the respective shares of the parties at a time when the stream had a flow of only twenty-three miner's inches. The year which gave rise to this suit was the driest that had been known for many years, and the apportionment included no greater quantity

than was flowing in the stream in the dry season of that year. The decree, in effect, declares that each riparian owner shall be entitled to a share of the water equal to one inch for each ten acres of his riparian land capable of profitable irrigation, if there is enough in the stream to serve all at that rate; that when there is not enough for all, each shall share the water in the proportion that his area of land so irrigable bears to the total area so irrigable, but that when only twenty-three miner's inches are flowing, they shall be respectively entitled only to the specific amounts stated; provided, that either one may take a greater quantity so long as none of the other parties objects. The mere objection by one riparian owner, in such a case, is not sufficient to deprive any other riparian owner of the use of the water of the stream. Each owner has the right to use the whole or any part of the water on his own riparian land at any time when such use does not interfere with the actual use by the other owners of their due shares. If any such owner is not using the water himself, he has no right to object to the use of it by another riparian owner on riparian land. The decree should have declared this rule more clearly. We presume that this was what was intended by the form used and that the parties so understood it, since the appellants do not object to its form in this particular. Nevertheless, to prevent further dispute, we think it well to modify the decree in accordance with the above views. But as no objection has been made regarding this point, the appellants will not be entitled to costs on account of the modification.

In apportioning the waters of a stream among the riparian owners, where there is not sufficient for the needs of all, many different facts are to be considered. In *Harris v. Harrison*, 93 Cal. 681, [29 Pac. 326], the court, in considering this question, said: "The length of the stream, the volume of water in it, the extent of each ownership along the banks, the character of the soil owned by each contestant, the area sought to be irrigated by each—all these, and many other considerations, must enter into the solution of the problem." (See, also, *Southern etc. Co. v. Wilshire*, 144 Cal. 71, [77 Pac. 767].) So far as we are aware, no court has ever undertaken to lay down a comprehensive rule on the subject. We are satisfied that the court may also consider the practicability of irrigation of the lands of the

respective parties, the expense thereof, the comparative profit of the different uses which could be made of the water on the land, and that when the water is insufficient for all the land or for all of the uses to which it might be applied thereon, and there is enough only for that use which is most valuable and profitable, the shares may properly be limited to and measured by the quantity sufficient for that use, and the proportions fixed accordingly. The party taking, under such a decree, could, of course, put his share so fixed to another beneficial use if he so desired. The decree here does not, and it should not, prohibit him from doing so. The apportionment made appears to have awarded to each his reasonable share of the limited quantity of water flowing in the stream during the dry season of the excessively dry year taken as the basis upon which the apportionment was made. The fact that it was made with regard to the area of land capable of profitable irrigation does not of necessity make the apportionment inequitable. It was a reasonable division for a year of that character. No reason appears why it should not be equally fair and reasonable to divide the water in the same proportions in other years when there is more water. As we have said, the fact that it is divided by reference to the area capable of profitable irrigation does not limit the use of any share to that purpose, but merely furnishes a standard for apportionment, and there is nothing in the evidence to prove that such apportionment would not be fair in other years for all the uses which the parties may desire to apply the water. The evidence as to the number of acres of the land of the respective parties that are susceptible of profitable irrigation is conflicting, and we find no ground upon which we could disturb the findings on that subject.

The court found that the appellants have used the water in the stream for watering stock and for domestic purposes. The findings do not state the amount used or the amount necessary for these purposes. We cannot say that the quantity necessary will not be too trifling to acquire any allowance on account of it. Our attention has not been called to any evidence as to the quantity necessary for that purpose, or that any is necessary in addition to the quantity allotted. Therefore, in aid of the judgment, we will presume that the court below so considered the allowance sufficient to cover

all purposes. Furthermore, the court made no specific allowance to the other parties for these uses. All are on the same basis regarding it. In time of scarcity all alike must make shift with the share allotted, and each must use it for such purposes as may be deemed most necessary, if he has not enough for all uses. This is clearly equitable and just. The appellants have merely mentioned the point in their briefs. They do not argue it. We therefore refrain from further discussion upon it.

The appellants contend that it does not appear that the ninety-six acres of Torello, for which he was allowed water for irrigation, has ever been actually irrigated. The point is immaterial. The court found that it could be profitably irrigated from the stream. If so, Torello is entitled to use his reasonable share of the water thereon at any time he may choose to do so. He does not gain such right by use nor does he lose it by disuse. His failure to use it in the past does not impair his right to use it in the future. So long as he makes no actual beneficial use of it, the other owners may take and use it even over his objection.

It is claimed that the evidence shows that seventy-eight acres of the Cowell land is susceptible of irrigation for which the court made no allowance. There is evidence to show that if the appellants could have obtained from Torello the right to make a diverting dam on his land above the Cowell land, and a right to maintain and use the dam and a ditch leading from it to their land, water could be carried by gravity to higher levels of the Cowell land than if it were taken out within the lines of that land, and that if this were done, about seventy-eight acres of that land could thereby be irrigated. The claim is based upon this evidence. But this does not establish the fact that it would be possible for them to obtain such right. It may be presumed that Torello would not give the right except for a valuable consideration. Conceding, but not deciding, that a mere possible right of this character could be considered at all, it was incumbent upon the appellants to prove that it would not cost too much to render the scheme profitable. They offered no evidence at all upon this point. The finding excluding this land from the right to the water for irrigation in times of scarcity is therefore sustained by the evidence.

The judgment is modified by adding thereto the following clause:

Providing, however, that nothing in this decree shall operate to prevent any one of the parties from taking and using the water of the stream on his own land at any time when such taking and use does not interfere with the use by any of the other owners, upon his riparian land, of his reasonable share of the water, as above limited.

As so modified, the judgment is affirmed. The order denying a new trial is also affirmed. The appellants shall not recover costs of appeal.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.